UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARTHA A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-02024-RLY-TAB |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner of | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S REQUEST FOR REMAND**

**I.    Introduction**

Plaintiff Martha A. appeals the Social Security Administration's denial of her application for disability insurance benefits. Plaintiff argues that the Administrative Law Judge failed to acknowledge Plaintiff's severe and persistent difficulties under the "B" criteria of Listing 12.04 during periods of sustained abstinence from substance abuse. [Filing No. 12, at ECF p. 24.] Furthermore, Plaintiff claims the ALJ improperly weighed the medical opinion of a clinical psychologist who examined Plaintiff in August 2018. As explained below, the ALJ's decision largely reflects a reasonable analysis of the medical record and opinions in relation to Plaintiff's limitations when her substance abuse is taken out of consideration. However, the ALJ failed to provide a logical bridge between the evidence and her conclusion that Plaintiff had the ability to attend, concentrate, and persist for two hours at a time, up to eight hours in a workday. Accordingly, on this basis, Plaintiff's request for remand [Filing No. 12] should be granted.

## II.     Background

On April 6, 2016, Plaintiff filed a Title II application for a period of disability and disability insurance benefits.  The SSA denied her claim initially and upon reconsideration. Following a hearing, the ALJ determined that Plaintiff was not disabled.

The ALJ followed the SSA's five-step sequential process to determine if Plaintiff was disabled.  First, the ALJ noted that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2019.  Next, at step one, the ALJ found Plaintiff engaged in substantial gainful activity from October 2016 through December 2016.  However, the ALJ found there had been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity, and the remaining findings of the ALJ addressed that period of time. At step two, the ALJ determined that Plaintiff had the following severe impairments: hepatitis C, cirrhosis, encephalopathy, depression, anxiety, neurocognitive disorder, and drug and alcohol abuse.  [Filing No. 10-2, at ECF p. 134.]

The ALJ found that the severity of Plaintiff's impairments, including the substance abuse disorders, met Section 12.04 of 20 CFR Part 404, Subpart P, Appendix 1.  The ALJ noted that if Plaintiff stopped the substance abuse, the remaining limitations would cause more than a minimal impact on her ability to perform basic work activities.  Thus, Plaintiff would continue to have a severe impairment or combination of impairments.  However, the ALJ also found that if Plaintiff stopped the substance abuse, she would not have an impairment or combination of impairments that medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Before reaching step four, the ALJ determined Plaintiff's residual functional capacity, or her remaining ability to function despite her limitations.  The ALJ concluded that if Plaintiff

stopped the substance abuse, she had the RFC to perform light work, with the following

limitations:

> [O]nly occasionally climbing of ramps and stairs, balancing, stooping, kneeling,
> crouching, and crawling, but no climbing of ladders, ropes, or scaffolds.  She can
> perform simple, routine tasks, and make simple work-related decisions.  She has
> the ability to attend, concentrate, and persist for two hours at time, up to eight
> hours in a workday.  Furthermore, she is limited to occasional interaction with co-
> workers, supervisors, and the public.

[Filing No. 10-2, at ECF p. 139.]

The ALJ concluded at step four that even if Plaintiff stopped the substance abuse, she

would be unable to perform past relevant work.  [Filing No. 10-2, at ECF p. 145.]  The ALJ also

noted that on the alleged disability onset date, Plaintiff was 44 years old (a younger individual),

had a limited education, and was able to communicate in English.  Finally, at step five, the ALJ

concluded that if Plaintiff stopped the substance abuse, considering Plaintiff's age, education,

work experience, and RFC, there are jobs that Plaintiff could perform, such as: merchandise

marker, photo machine operator, and mail sorter.  [Filing No. 10-2, at ECF p. 147.]  The ALJ

concluded that Plaintiff's substance abuse disorder is a contributing factor material to the

determination of disability, because Plaintiff would not be disabled if she stopped the substance

abuse.  Accordingly, the ALJ concluded that Plaintiff has not been disabled within the meaning

of the Social Security Act at any time from the alleged onset date through the date of the ALJ's

decision.

### III.    Discussion

Plaintiff argues that the ALJ failed to adequately support her conclusion that Plaintiff had no more than moderate limitations under the "B" criteria of Listing 12.04 if she stopped the substance abuse.  Additionally, Plaintiff argues that the ALJ erred in the analysis of Dr. Maurissa Abecassis's neuropsychological evaluation and opinion.  The Court reviews the ALJ's decision to determine whether the ALJ's factual findings are supported by substantial evidence.  *See, e.g., Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings shall be conclusive if supported by substantial evidence."  (Internal quotation marks omitted)).  "The court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner.  Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled."  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).

### A.    "B" criteria of Listing 12.04

Plaintiff argues that the ALJ failed to support her conclusion that Plaintiff has no more than moderate limitations under the "B" criteria of Listing 12.04 if she stops the substance abuse.  [Filing No. 12, at ECF p. 24.]  A claimant cannot be found to be disabled for Social Security purposes solely based on drug or alcohol addiction.  Rather, under the Act, "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(C).  In determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability, the adjudicator must determine whether the claimant would be found disabled if she stopped using drugs or alcohol.  *See, e.g., Kangail v. Barnhart,*

454 F.3d 627, 628 (7th Cir. 2006) ("When an applicant for disability benefits both has a potentially disabling illness and is a substance abuser, the issue for the administrative law judge is whether, were the applicant not a substance abuser, she would still be disabled."). "If the claimant is found to be disabled when the substance abuse is included, the ALJ must then separate out non-substance-abuse impairments and determine whether the claimant would still be disabled without the drug and alcohol abuse." *Hartung v. Colvin*, 10 F. Supp. 3d 965, 973-74 (W.D. Wis. 2014).

Here, the ALJ found Plaintiff's drug and alcohol abuse was a contributing factor material to the determination of disability because she would not satisfy the definition of disability if she stopped abusing drugs and alcohol. [Filing No. 10-2, at ECF p. 147.] Thus, when Plaintiff's substance abuse is taken into consideration, Plaintiff meets Listing 12.04 and would be considered disabled. However, the more difficult question presented to the ALJ was whether the evidence supported a conclusion that Plaintiff would be disabled without the substance abuse.[1] The ALJ concluded that it did not.

To meet or medically equal Listing 12.04, the Social Security regulations require that the evidence satisfies either paragraphs A and B criteria, or paragraphs A and C criteria. 20 C.F.R. Part 404, Subpart P, App'x 1 § 12.04. Plaintiff takes issue with the ALJ's conclusion that Plaintiff has no more than moderate limitations under the paragraph B criteria of Listing 12.04.

---

[1] Plaintiff argues that the evidence does not support the ALJ's conclusion that Plaintiff's history of substance abuse is material. Plaintiff admits that during the relevant time period, she occasionally had positive drug screens. Plaintiff even submitted as an exhibit a list of her positive and negative drug screens, as well as Plaintiff's admissions of substance use. [Filing No. 12-1.] Plaintiff regularly admitted to her brief relapses. However, Plaintiff argues that most of the instances of substance abuse and relapse occurred during the time period the ALJ found Plaintiff to be working at substantial gainful levels. Even so, the larger question is whether Plaintiff met the criteria for Listing 12.04 without considering any substance abuse.

Paragraph B requires evidence that the claimant has extreme limitation in one, or marked limitation in two, of four functional categories: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.*

In determining whether Plaintiff's impairments met or equaled Listing 12.04, the ALJ relied on evidence in the medical record, including the post-hearing medical interrogatories submitted to medical expert Dr. James M. Brooks. Dr. Brooks reviewed the complete medical record and opined that, with drug and alcohol abuse, Plaintiff's impairments caused marked limitations in all four paragraph B criteria under the listing. [Filing No. 10-15, at ECF p. 149.] However, without drug and alcohol abuse, Dr. Brooks opined that Plaintiff's limitations would be no more than moderate in understanding, remembering, or applying information and in concentration, persistence, and pace, and moderate to possibly marked in interacting with others and in adapting or managing herself. [Filing No. 10-15, at ECF p. 149.] The ALJ gave great weight to Dr. Brooks's opinion. Plaintiff completely side steps the ALJ's reliance on Dr. Brooks's opinions and instead attempts to show remand is required if the Court reweighs the evidence to find marked limitations. It is not the role of the Court to re-weigh the evidence. *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) ("The court's role is not to reweigh evidence, but to determine whether the ALJ built an accurate and logical bridge between the evidence and the conclusion." (Internal citation and quotation marks omitted)).

Plaintiff notes that she continued to receive very regular mental health treatment for anxiety and depression even during periods of sustained sobriety, and that she was admitted to a mental health recovery center for suicidal ideation for two weeks. However, the ALJ also noted these facts. [Filing No. 10-2, at ECF p. 138.] Plaintiff also argues that the ALJ cited only a few

instances of "normal" examinations in the medical record while ignoring an abundance of contradictory evidence.  [Filing No. 12, at ECF p. 26.]  The ALJ concluded that the majority of Plaintiff's mental status examinations throughout the record documented largely unremarkable findings, but she also generally acknowledged that "there were some abnormalities[.]"  [Filing No. 10-2, at ECF p. 141.]  Plaintiff's brief in support of her request for remand contains a laundry list of contradictory findings indicating that Plaintiff at times presented as frustrated, aggressive, and agitated; had a flat affect and depressed mood; was noted to have poor judgment; was confused and irritated; and at times presented as angry, emotional, and distraught.  [Filing No. 12, at ECF p. 26.]  Plaintiff correctly notes that the ALJ did not directly recite or address these portions of Plaintiff's records.

However, Plaintiff then argues that this evidence "does not support the ALJ's contention that [Plaintiff]'s mental impairments are not as severe when she stops the substance use."  [Filing No. 12, at ECF p. 27.]  This is an inaccurate description of the ALJ's decision.  The ALJ specifically noted that even if Plaintiff stopped the substance abuse, the remaining limitations would cause more than a minimal impact on her ability to perform basic work activities and she would continue to have a severe impairment or combination of impairments.  [Filing No. 10-2, at ECF p. 137.]  However, the ALJ also concluded that without the substance abuse, Plaintiff would not meet the paragraph B criteria of Listing 12.04.  Thus, the focus should be on whether the ALJ's conclusion that Plaintiff would not meet the paragraph B criteria is supported by substantial evidence, not whether her impairments would be severe.

On this issue, the majority of Plaintiff's arguments fall short.  First, Plaintiff argues that the ALJ erroneously found Plaintiff only had moderate limitations in adapting or managing herself, despite the fact that she needed to live in a group home for a year to receive mental

7

health treatment.  The ALJ's decision articulates the ALJ's reasoning for concluding that Plaintiff had only a moderate limitation in this area when her substance abuse was taken out of the equation.  The ALJ noted that the record demonstrated Plaintiff reported she could perform a variety of daily activities, including cooking, cleaning, caring for a pet, babysitting, shopping, and managing her finances.  The ALJ acknowledged that Plaintiff had a brief inpatient psychiatric admission for suicidal ideation, but the ALJ found that the record indicated her symptoms improved when she was not abusing substances, and her mental status examinations generally showed fair to good judgment and insight.  [Filing No. 10-2, at ECF p. 138.]

In regard to Plaintiff's ability to understand, remember, or apply information, Plaintiff takes issue with the ALJ's finding that Plaintiff admitted to working part-time at Goodwill for three to four months.  While this finding is accurate, Plaintiff argues that the ALJ failed to elicit any information regarding her employment at Goodwill, such as whether it was a sheltered position.  Plaintiff has the burden of proving disability and producing evidence.  *See* 20 C.F.R. § 404.1512(a).  Plaintiff did not raise any arguments alleging that her work at Goodwill was sheltered employment when she testified at the hearing or with the vocational expert.  Nothing in Plaintiff's testimony indicated that she required additional supervision during her time at Goodwill or otherwise indicated that her employment at Goodwill was for a sheltered position.  Plaintiff's only argument is that her employment at Goodwill was "right in line" with Dr. Abecassis's recommendations regarding Plaintiff needing closely supervised work and a slow work pace.  The ALJ's assessment of Dr. Abecassis's opinion is addressed below.  Here, Plaintiff's argument amounts to no more than a request to re-weigh the evidence, which the Court should not do.  *See Burmester*, 920 F.3d at 510.

Plaintiff also claims that the ALJ ignored evidence that she struggled with reading and understanding the directions on her medication bottles, is confused by her schedule, and struggles to stick with her schedule.  The ALJ did not directly recite this evidence.  However, in reaching the conclusion that Plaintiff had a moderate limitation in understanding, remembering, and applying information, the ALJ noted that Plaintiff's intellectual testing showed extremely low intellectual functioning, but several mental status examinations throughout the record indicated that Plaintiff presented with intact memory and average intelligence.  [Filing No. 10-2, at ECF p. 137.]  In addition, the ALJ noted that Plaintiff was able to provide information about her medical conditions and describe her past work history at the hearing.  Thus, while the ALJ may not have addressed every strand of evidence in the record, the ALJ's decision reflects a reasonable evaluation of the evidence.

However, Plaintiff's argument as to her alleged concentration, persistence, or pace limitations is more persuasive.  The ALJ concluded that Plaintiff had a moderate limitation with regard to concentrating, persisting, or maintaining pace.  [Filing No. 10-2, at ECF p. 138.]  Yet the ALJ also assessed that Plaintiff had the ability to "attend, concentrate, and persist for two hours at a time, up to eight hours in a workday" in Plaintiff's RFC.  [Filing No. 10-2, at ECF p. 139.]  Plaintiff claims that the ALJ offered no basis for her two-hour limitation, and further argues that the statement in the RFC essentially amounts to no impairments in attention, concentration, or pace.  Plaintiff argues that this case is similar to *Goodman v. Saul*, No. 3:19-cv-333-RLM-SLC, 2020 WL 3619938, at *7 (N.D. Ind. June 10, 2020), *report and recommendation adopted*, No. 3:19-cv-333 RLM-SLC, 2020 WL 3618988 (N.D. Ind. July 2, 2020), where the ALJ found that the claimant had moderate limitations in concentration, persistence, or pace, and found the claimant able to sustain concentration for two-hour segments.  In *Goodman*, the district

court found it was not clear whether the ALJ's two-hour limitation was properly supported by the record or accounted for the claimant's moderate limitations. *Id.*, 2020 WL 3619968 at *8. The Commissioner conveniently ignores this portion of Plaintiff's argument.

In concluding that Plaintiff had no more than a moderate limitation in her ability to concentrate, persist, or maintain pace, the ALJ noted that consultative examinations and Plaintiff's neuropsychological examination documented poor concentration, but at the hearing, Plaintiff was able to follow along and answer questions appropriately. [Filing No. 10-2, at ECF p. 138.] In addition, the ALJ noted that the majority of Plaintiff's mental status examinations in the record documented largely unremarkable findings, and the ALJ once again cited to Plaintiff's history of working in a bar, babysitting, and part-time at Goodwill. In addition, later in the decision, the ALJ explained that while she concluded that Plaintiff had moderate limitations in the paragraph B criteria for concentration, persistence, or maintaining pace

> this is based upon the record as a whole and all situations the claimant might encounter. However, when limited to simple routine tasks, with only occasional interaction with others, her ability to function is higher. Within these parameters, she is able to sustain the attention, concentration, and persistence needed to perform in an ordinary work setting on a regular and continuing basis.

[Filing No. 10-2, at ECF p. 142.]

"An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2014). Here, while the ALJ generally explained her thought process, she did not build a logical bridge to explain in any detail what evidence led her to the conclusion that Plaintiff had the ability to attend, concentrate, and persist for two hours at a time, up to eight hours in a workday. *See, e.g., Lashonda M. v. Saul*, No. 1:20-cv-765-MJD-SEB, 2021 WL 2659596, at *8 (S.D. Ind. June 28, 2021) ("[N]owhere in the ALJ's decision does he make it clear how he arrived

at the two-hour interval figure.  No state agency doctor or any other doctor offered this opinion. Absent support in the record for the two-hour interval, the ALJ impermissibly formulated his own independent medical opinion regarding the effects (or lack of effects) of the claimant's moderate difficulties of concentration, persistence, or pace."  (Internal citation, quotation marks, and brackets omitted)).  Here, the ALJ did not provide any basis for the two-hour limitation or her conclusion that Plaintiff could sustain concentration in an ordinary work setting on a regular and continuing basis.  The Court takes no position on whether this limitation is supported by the evidence.  That is a decision for the ALJ.  Nevertheless, Plaintiff's request for remand should be granted so that the ALJ can properly evaluate the evidence regarding Plaintiff's ability to concentrate and articulate a logical bridge between the evidence, Plaintiff's limitations, and the ALJ's conclusion on this issue in the resulting RFC.

### B.    Weight given to Dr. Abecassis's opinion

Plaintiff also argues that the ALJ erred in her analysis of Dr. Abecassis's neuropsychological evaluation and opinion.  [Filing No. 12, at ECF p. 31.]  Dr. Abecassis stated that Plaintiff would benefit from living in a highly structured small group setting, a high level of supervision and oversight of her medication, and close monitoring.  She also stated Plaintiff would benefit from closely supervised work and slow-paced work, and advised against work where Plaintiff would be on her feet.  The ALJ gave Dr. Abecassis's opinion only partial weight because "the extreme limitation[s], specifically with regard to high level of supervision in work and at home, are not entirely supported by the evidence of record."  [Filing No. 10-2, at ECF p. 144.]

Substantial evidence supports the ALJ's decision not to give Dr. Abecassis's opinion controlling weight.  The ALJ reiterated that Plaintiff reported being able to independently

perform a variety of daily activities, including working 20 hours per week for Goodwill for three to four months, without any mention of significant difficulties, in a bar, as a babysitter, and in her friend's shop.  [Filing No. 10-2, at ECF p. 144.]  And in relation to Dr. Abecassis's opinion on Plaintiff's balance issues, the ALJ observed that therapy notes indicated Plaintiff demonstrated normal gait.  Once again, Plaintiff's argument is tantamount to a request for this Court to review the evidence and come to a different conclusion.  That is not proper.

Plaintiff also generally argues that the ALJ is not permitted to substitute her own judgment for that of a medical expert.  [Filing No. 12, at ECF p. 35-36.]  However, in relation to the ALJ's consideration of Dr. Abecassis's opinion, Plaintiff does not identify any portion of the ALJ's decision where the ALJ made her own independent medical determinations about the Plaintiff's position.  Nevertheless, as the Court recommends that this matter be remanded on other grounds, the ALJ may use the opportunity to re-evaluate the record, including Dr. Abecassis's opinion, and update the ALJ's decision as deemed necessary.

## IV.    Conclusion

For reasons stated above, Plaintiff's request for remand [Filing No. 12] should be granted in order for the ALJ to create a logical bridge between the evidence and resulting RFC in relation to Plaintiff's moderate limitations in persistence, concentration, and pace.  Any objection to the magistrate judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1).  Failure to file timely objections within 14 days shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 9/21/2021

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email